# United States Court of Appeals
## FOR THE NINTH CIRCUIT

**SOFIA JOHNSON,**

*Plaintiff-Appellant,*

v.

**UNITED STATES OF AMERICA,**

*Defendant-Appellee.*

On Appeal from the United States District Court
for the Central District of California, Riverside
Case No. 5:21-cv-01878 JGB (KKx) (Honorable Jesus G. Bernal)

## APPELLANT'S OPENING BRIEF

Jason D. Wright
Lorena Guzmán-Díaz
CURTIS, MALLET-PREVOST,
COLT & MOSLE LLP
101 Park Avenue
New York, New York 10178
Tel: (212) 696-6000

Keith R. Ayers, Esq.
4958 Radford Avenue
Valley Village, California 91607
Tel: (310) 626-5750

Stephen G. Larson
Jerry A. Behnke
Catherine S. Owens
LARSON LLP
555 S. Flower Street, Suite 4400
Los Angeles, California 90071
Tel: (213) 436-4888

*Attorneys for Plaintiff-Appellant Sofia Johnson*

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS...................................................................... i

TABLE OF AUTHORITIES ............................................................... iii

INTRODUCTION ................................................................................1

STATEMENT OF JURISDICTION....................................................2

    A.    District Court Jurisdiction ........................................................2

    B.    Appellate Court Jurisdiction and Timeliness of Appeal ......................3

ISSUE PRESENTED FOR REVIEW ..................................................4

STATEMENT OF THE CASE............................................................4

    A.    Statement of Facts ...................................................................5

        1.    Sofia Johnson Acquired Derivative U.S. Citizenship at Birth.............................................................................5

        2.    The Government Unlawfully Arrested, Detained, Imprisoned, Prosecuted, and Deported A United States Citizen Multiple Times Over the Course of 20 Years ...............6

        3.    The Government Breached Its Mandatory Duty to Inquire and/or Investigate Sofia Johnson's Citizenship Status ...............7

        4.    Sofia Johnson Consistently Sought Relief for the Government's Misconduct, But the Government Imprisoned and Prosecuted Her Instead ....................................9

        5.    While the Immigration Court Granted Sofia Johnson's Motion to Reopen and Terminate Immigration Proceedings, Only the U.S. Secretary of State Could Grant Her Citizenship and Entry Into The United States .........................11

        6.    The Government Finally Acknowledged that Sofia Johnson Was Always A Citizen of the United States, Awarding Her A Passport in June 2016....................................12

    B.    Procedural Background and Disposition Below ................................12

        1.    Administrative Claim................................................................12

        2.    District Court Proceedings.......................................................13

        3.    Appellate Proceedings ............................................................16

SUMMARY OF THE ARGUMENT ..................................................16

STANDARD OF REVIEW ....................................................................17

ARGUMENT .......................................................................................18

    I.     THE DISTRICT COURT ABUSED ITS DISCRETION BY
         FINDING THAT MS. JOHNSON WAS REQUIRED TO
         DEMONSTRATE EQUITABLE TOLLING BEYOND THE
         STATUTORY LIMITATIONS PERIOD..........................................18

CONCLUSION ....................................................................................21

STATEMENT OF RELATED CASES....................................................23

CERTIFICATE OF COMPLIANCE ....................................................24

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*DeNoce v. Neff* (*In re Neff*),
 824 F.3d 1181 (9th Cir. 2016) .............................................................18, 19, 20

*Heck v. Humphrey*,
 512 U.S. 477 (1994).........................................................................................14

*Just Film, Inc. v. Buono*,
 847 F.3d 1108 (9th Cir. 2017) ........................................................................17

*Koon v. United States*,
 518 U.S. 81 (1996)...........................................................................................17

*Lozano v. Montoya Alvarez*,
 572 U.S. 1 (2014).............................................................................................19

*Mastro v. Rigby*,
 764 F.3d 1090 (9th Cir. 2014) ...................................................................18, 21

*Richard S. v. Dep't of Developmental Servs. of California*,
 31 F.3d 1080 (9th Cir. 2003) ...........................................................................18

*Romero v. Perryman (In re Easysaver Rewards Litig.)*,
 906 F.3d 747 (9th Cir. 2018) .....................................................................18, 21

*United States v. Beltran-Gutierrez*,
 19 F.3d 1287 (9th Cir. 1994) ...........................................................................18

*United States v. Hinkson*,
 585 F.3d 1247 (9th Cir. 2009) .........................................................................17

*United States v. Ibarra*,
 502 U.S. 1 (1991).......................................................................................19, 20

*Yokoyama v. Midland Nat'l Life Ins., Co.*,
 594 F.3d 1087 (9th Cir. 2010) .........................................................................17

**Federal Statutes**

22 C.F.R.
  § 50.2................................................................................................12

8 U.S.C.
  § 1104..............................................................................................12
  § 1401(a)(7) (INA Section 301(a)(7)) ............................................5
  § 1409 (INA Section 309(a)) ...............................................5, 7, 10

28 U.S.C.
  § 1291.................................................................................................3
  § 1331.................................................................................................3
  § 1346(b)(1) ......................................................................................3
  § 2401(b) ...........................................................................................3
  § 2671.................................................................................................2
  § 2675(a) .......................................................................................3, 5

**Federal Rules**

Fed. R. App. P. 4(a)(1)(B) ..................................................................3

# INTRODUCTION

The facts of this case are unprecedented. Over the course of 20 years, Defendant-Appellee United States of America ("Government" or "Defendant") repeatedly and unlawfully arrested, detained, imprisoned, prosecuted, deported, and denied entry to Plaintiff-Appellant Sofia Johnson ("Ms. Johnson" or "Plaintiff"), a U.S. citizen, on the basis that she was a purported "illegal alien."

Beginning in 1996, when Ms. Johnson was first unlawfully deported, until June 2016, when she was finally issued a U.S. passport and permitted to enter her own country, Government officials arrested Ms. Johnson, prosecuted her for "lying" about her citizenship, threw her in federal prison for almost a ***decade***, and deported her at least ***eight times*** to a foreign country. The Government committed these grave violations against a U.S. citizen despite having evidence of Ms. Johnson's derivative citizenship and in direct contravention of at least five U.S. Immigration and Customs Enforcement ("ICE") directives. Ms. Johnson's Immigration and Naturalization Services ("INS") records reveal multiple instances in which the Government had notice that Ms. Johnson's father was a U.S. citizen, and yet did nothing to investigate her citizenship, resulting in the unlawful prosecution, imprisonment, and deportation of a U.S. citizen.

To seek redress for the Government's egregious actions, Ms. Johnson filed an administrative claim with the U.S. Department of Homeland Security ("DHS") on

May 14, 2018, for violations of the Federal Torts Claims Act ("FTCA"), 28 U.S.C. §§ 2671 *et seq.*, which has a two-year statute of limitations period. *See id.* § 2401(b).

The District Court found that Ms. Johnson's claims were equitably tolled up until the day she was awarded a U.S. passport on June 14, 2016, thereby making her administrative claim—filed less than two years later—timely. Nevertheless, the District Court dismissed Ms. Johnson's lawsuit because she failed to demonstrate equitable tolling beyond the FTCA's two-year statute of limitations period. The court erroneously found that Ms. Johnson was required to demonstrate equitable tolling for ***an additional two years***, up until the day she presented her administrative claim to DHS. That is not what the doctrine of equitable tolling requires. The District Court's decision is premised on a clear error of law, resulting from an obvious misapplication of equitable tolling to the facts underlying Ms. Johnson's case. The Ninth Circuit should afford no deference to the District Court's legal error. Accordingly, the District Court's order dismissing Ms. Johnson's First Amended Complaint ("FAC") should be reversed.

## STATEMENT OF JURISDICTION

### A.  District Court Jurisdiction

Ms. Johnson filed her Complaint in the U.S. District Court for the Central District of California, Riverside, on November 4, 2021. 2-ER-223–261 [Doc 1].[1]

---

[1] "Doc" refers to the District Court's Docket Entry.

The District Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1346(b)(1) based on its jurisdiction over issues concerning a federal question, as well as 28 U.S.C. § 1331, because this case is an action for money damages as compensation for personal injuries under the FTCA.

### B. Appellate Court Jurisdiction and Timeliness of Appeal

On January 4, 2023, the District Court entered an order granting Defendant's Motion to Dismiss Plaintiff's FAC. *See* 1-ER-2–8 [Doc 49] (the "Second MTD Order"). Pursuant to Federal Rule of Appellate Procedure ("FRAP") 4(a)(1)(B), Ms. Johnson timely filed her Notice of Appeal on March 5, 2023. 2-ER-262–63 [Doc 50]. This Court has appellate jurisdiction under FRAP 4(a)(1)(B). Moreover, because the District Court's Second MTD Order finally disposed of this case, jurisdiction is conferred on this Court by 28 U.S.C. § 1291.

## STATUTORY AND REGULATORY AUTHORITIES

The relevant statutory and regulatory authorities at issue on appeal are reproduced below.

**28 U.S.C. § 2401(b)** – Time for Commencing Action Against United States

> A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented.

**28 U.S.C. § 2675(a)** – Disposition by Federal Agency As Prerequisite; Evidence

An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail. The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section. The provisions of this subsection shall not apply to such claims as may be asserted under the Federal Rules of Civil Procedure by third party complaint, cross-claim, or counterclaim.

## ISSUE PRESENTED FOR REVIEW

1.      Whether the District Court abused its discretion when it determined that, under the doctrine of equitable tolling, Ms. Johnson was required to show equitable tolling beyond the FTCA's two-year statute of limitations period.

## STATEMENT OF THE CASE

This appeal arises from the District Court's Second MTD Order granting the Government's Motion to Dismiss Plaintiff's FAC (the "Motion"). *See* 2-ER-65–99 [Doc 44].

## A. Statement of Facts[2]

### 1. Sofia Johnson Acquired Derivative U.S. Citizenship at Birth

Ms. Johnson was born in Sonora, Mexico in 1962 to a Mexican mother and a U.S. citizen father. 2-ER-105 (¶ 19). Ms. Johnson's father, Alvin Johnson, was born in Wyoming on September 4, 1921. *Id.* Pursuant to the then-operative provisions of the Immigration and Nationality Act ("INA"), INA Sections 301(a)(7) and 309(a),[3] Ms. Johnson was granted *de jure* U.S. citizenship at the time of her birth, based on the subsequent acts of her father, a U.S. citizen, to legitimate the paternity. 2-ER-107 (¶ 27). Military and Social Security administrative records show that Mr. Johnson was present in the United States at least ten years prior to Ms. Johnson's birth—at least five of which were after he attained the age of fourteen. 2-ER-108 (¶ 30). And though Ms. Johnson was born out of wedlock, her father properly legitimated her as his daughter by marrying her mother in 1963—one year after her birth. *Id.* (¶ 31). Accordingly, all requirements under INA Sections 301(a)(7) and 309(a) were met, making Ms. Johnson a U.S. citizen at birth. 2-ER-109 (¶ 32).

---

[2] Plaintiff's FAC contains a long factual history. *See* 2-ER-101–21. The facts are reproduced herein only insofar as is necessary to consider the core issue on appeal: whether the District Court abused its discretion when it misapplied the doctrine of equitable tolling to the facts underlying Ms. Johnson's case.

[3] *See* Pub. L. No. 414, 66 Stat. 235-236 (June 27, 1952) (8 U.S.C. § 1401(a)(7)); *see also* Pub. L. No. 414, 66 Stat. 238 (1952) (8 U.S.C. § 1409).

Soon after her parents wed, Ms. Johnson and her mother moved to the United States to live with her father in Washington state. 2-ER-106 (¶¶ 21–22); 2-ER-107 (¶ 26). Unfortunately, that same year, her father tragically died in a car accident. 2-ER-107 (¶ 26). Alongside her mother and siblings, Ms. Johnson moved back to California, where she continuously resided until May 21, 1996, when she was wrongfully detained and deported for the first time. *Id.*

2. *The Government Unlawfully Arrested, Detained, Imprisoned, Prosecuted, and Deported A United States Citizen Multiple Times Over the Course of 20 Years*

In 1994, Ms. Johnson was convicted of a non-violent offense in California, for which she served approximately ten months in state prison. 2-ER-109 (¶ 33). Following her release from prison, the Immigration Court in Los Angeles issued Ms. Johnson a notice of hearing of a deportation proceeding scheduled for October 24, 1995. *Id.* (¶ 34). Prior to the hearing, Ms. Johnson was returned to prison for violating the terms of her California state parole. *Id.* (¶ 37). Because she was never transferred from detention to immigration court, the Immigration Judge ordered her removed from the United States *in absentia*, without any hearing or opportunity to present evidence of her citizenship. 2-ER-109 (¶ 38). Just like that, a U.S. citizen was deported to a foreign country.

Ms. Johnson then tried to return to the United States and told ICE officials that she was a U.S. citizen because of her father. 2-ER-110 (¶ 39). But instead of

reviewing her claim to citizenship, the Government placed her in custodial detention and deported her to Mexico. *Id.* Each time Ms. Johnson tried to gain entry into the United States and explain that she was a citizen, the Government (1) told her that she was not a U.S. citizen, (2) arrested her, (3) prosecuted her for illegal reentry and false claim to citizenship, and (4) deported her to Mexico. 2-ER-112 (¶ 42). Indeed, over the course of twenty years, from May 1996 to June 2016, Ms. Johnson was unlawfully deported a total of ***eight*** times, and falsely convicted and imprisoned for ***more than nine years*** in U.S. federal prison on the grounds that she had "illegally" entered the country and "falsely" claimed to be a citizen. 2-ER-110 (¶ 39).[4] None of the Government's actions were justified, as Ms. Johnson was, at all times, a lawful citizen of the United States. 2-ER-112 (¶ 42).

     *3.*    *The Government Breached Its Mandatory Duty to Inquire and/or Investigate Sofia Johnson's Citizenship Status*

The Government's own records demonstrated Ms. Johnson's citizenship status. 2-ER-113 (¶ 43). Her INS file and other public records reveal that:

- On November 1, 1963, Ms. Johnson's father arranged for both Ms. Johnson and her mother to move to the United States to live with him. The Form FS-510 specified that Ms. Johnson was to join "Alvin Adam Johnson" at his address in Yakima, Washington, as his "***natural daughter***" to "live with her parents and siblings." *See* 2-ER-113 (¶ 43a). The accompanying Form FS-398, Medical Examination, named Plaintiff-Appellant as "Sofia Acevedo ***Johnson***." *Id.*

---

[4] All emphasis is added, unless stated otherwise.

- On April 30, 1998, INS Officer F. Nolan completed a Form I-213 and recorded that Ms. Johnson's parents were "***JOHNSON, ALVIN / USC / ***DECEASED" and "ACEVEDO, SOPHIA / MEXICO / USA / USC," making it clear the Government knew as early as 1998 that her father was a U.S. citizen. *Id.* (¶ 43b).

- On June 7, 2000, Immigration and Enforcement Agent Eddie Wang completed another Form I-213, recording that Ms. Johnson's father, "Alvin," was a ***citizen of the United States***. *Id.* (¶ 43c).

- On December 15, 2009, Border Patrol Officer Velasquez, during a recorded interview of Ms. Johnson, failed to inquire into the citizenship status of Ms. Johnson's father after she told him her father ***was a U.S. citizen***; he also failed to inquire further into her citizenship status when, in response to his question about her nationality, she threw up her hands in exasperation and said: "I believe I am a citizen of Mexico, I guess, ***that's what I'm told***." *Id.* (¶ 43d).

- In 2010, Ms. Johnson's mother and uncle provided DHS with sworn affidavits certifying the courtship between her parents, as well as Alvin Johnson's steps to legitimize Ms. Johnson as his daughter, stating, *inter alia*, "***My daughter Sofia Johnson is the biological daughter of Alvin Johnson***." 2-ER-114 (¶ 43e).

Thus, each time Ms. Johnson tried to reenter her own country, the Government was on notice of her derivative U.S. citizenship, and yet never inquired or investigated her legal status—instead throwing her in jail, accusing her of falsely claiming to be a citizen, and deporting her to Mexico. *Id.* (¶ 44). These actions directly violated five directives promulgated by DHS, which mandate that when an individual claims U.S. citizenship, or when indicia of citizenship are present, immigration and law enforcement officers and employees are required to conduct a prompt and thorough investigation to confirm the individual's citizenship status. 2-

ER-114 (¶ 45). The Government did none of those things. 2-ER-115 (¶ 46). As a result of the Government's violations, Ms. Johnson was removed from her own country and forced to live on the squalid streets of Tijuana until she was finally awarded a U.S. passport on June 14, 2016. *Id.*; 2-ER-118 (¶ 57).

4. *Sofia Johnson Consistently Sought Relief for the Government's Misconduct, But the Government Imprisoned and Prosecuted Her Instead*

Despite these hardships, Ms. Johnson persevered and consistently sought relief for the Government's misconduct. 2-ER-116 (¶ 47). As early as 1995, when she was first unlawfully detained, Ms. Johnson sent a letter to the Immigration Court, requesting the assistance of counsel in opposing the deportation proceedings. *Id.* Notwithstanding that both the Immigration Court and District Court received her letter before the hearing, the Immigration Court entered a deportation order without Ms. Johnson present. *Id.* (¶ 48).

Subsequently, in 2009, after multiple attempts to gain entry into the United States—and the Government unlawfully imprisoning her—Ms. Johnson presented evidence of her citizenship through the support of an assistant federal defender. *Id.* (¶ 49). Thereafter, the Government dismissed two counts of alleged unlawful entry into the United States against Ms. Johnson. *Id.* Yet, in a further gross abuse of justice, the Government again accused Ms. Johnson of "falsely" stating she was a U.S.

citizen, detained her for eight months, and deported her to Mexico on August 16, 2010. *Id.*

Finally, in 2015, Ms. Johnson found pro bono counsel, Keith Ayers, to assist her. *Id.* (¶ 50). Mr. Ayers contacted the U.S. Consulate in Tijuana in July 2015 and had numerous conversations with them over the next several months. *Id.* These Government officials advised that Ms. Johnson should go to the border and seek temporary admission to the United States, so she could then proceed to file for her citizenship papers. *Id.*

Pursuant to that advice, Mr. Ayers and Ms. Johnson drove to the San Ysidro border to speak with ICE officials. 2-ER-117 (¶ 51). At the border, Mr. Ayers handed two ICE officers Ms. Johnson's documents and requested to speak with an officer in secondary inspection. *Id.* The officers waved them into the secondary inspection station and asked to speak with Ms. Johnson privately. *Id.* After waiting for about an hour, the officers came back without Ms. Johnson and told Mr. Ayers that they were going to detain him and possibly charge him with alien smuggling. *Id.* The officers proceeded to handcuff Mr. Ayers, took him to the processing room, and stripped him down to his underclothes. *Id.* Mr. Ayers asked if he was under arrest, to which the ICE officer responded: "Why would we arrest you? Then you'd have rights. Patriot Act says we can detain you for up to 72 hours while we decide what to do with you." *Id.*

After several panic-filled hours, a supervisor came to speak with Mr. Ayers and Ms. Johnson. *Id.* (¶ 52). Mr. Ayers explained that Ms. Johnson was a citizen of the United States and showed the supervisor her paperwork. *Id.* The supervisor refused to listen, opting instead to tell Mr. Ayers that they needed to go back to the Consulate to work it out—which directly contradicted the advice previously given to him by the U.S. Consulate. *Id.* At that point, Ms. Johnson was released and deported back to Mexico, while Mr. Ayers returned to the United States with no charges filed. *Id.*

5. <i>While the Immigration Court Granted Sofia Johnson's Motion to Reopen and Terminate Immigration Proceedings, Only the U.S. Secretary of State Could Grant Her Citizenship and Entry Into The United States</i>

In the months that followed, Mr. Ayers and his office remained in constant contact with the U.S. Consulate in Tijuana and filed motions to terminate Ms. Johnson's removal orders, as well as to obtain a U.S. passport. *Id.* (¶ 53). On May 10, 2016, pursuant to the application of her pro bono counsel, the Immigration Court in San Francisco granted an emergency Joint Motion to Reopen and Dismiss all deportation proceedings outstanding against Ms. Johnson. 2-ER-118 (¶ 54). The Immigration Judge's order, however, merely removed the prior deportation and removal orders, as the Immigration Judge has (and had) no power to formally confer citizenship. *Id.* Instead, only the U.S. Department of State has the singular power to determine the nationality of a person not physically present in the United States. *Id.*

(¶ 55). *See* 8 U.S.C. § 1104; *see also* 22 C.F.R. §§ 50.2 *et seq.* Based on the State Department's unique power, Ms. Johnson—who had been continuously removed to Mexico—submitted an emergency passport application on May 18, 2016, to the U.S. Consulate General in Tijuana, Mexico with the assistance of her pro bono counsel. *Id.* (¶ 56).

6.    *The Government Finally Acknowledged that Sofia Johnson Was Always A Citizen of the United States, Awarding Her A Passport in June 2016*

Finally, on June 14, 2016—after two decades of being denied the citizenship status she was entitled to since birth—the Government recognized Ms. Johnson as a citizen and provided her a U.S. passport. *Id.* (¶ 57). She could finally rejoin her daughter, mother, brothers, nieces and nephews, and grandchildren after 20 years of unlawful separation. *Id.* While Ms. Johnson is grateful that she can now live in this country without further legal disability, the Government's multiple violations have had a devasting impact on her life, robbing her of nearly a decade of wage-earning years and causing her psychological and emotional pain, as well as suffering. *Id.* She should not be left with no remedy.

**B.    Procedural Background and Disposition Below**

*1.    Administrative Claim*

Ms. Johnson exhausted all administrative remedies on May 14, 2018, when she submitted her administrative claim to DHS—the appropriate government

agency—pursuant to the FTCA.[5] 2-ER-105 (¶ 15). That claim was never acted upon nor investigated by DHS, and more than six months passed from the time of presentment of such administrative claim without DHS making a final disposition thereof.[6] *Id.*

### 2. *District Court Proceedings*

Accordingly, on May 13, 2020, Ms. Johnson filed suit in the U.S. District Court for the Central District of California pursuant to the FTCA. *Id.* (¶ 16). *See* Complaint, *Johnson v. United States*, No. 20-cv-04350 DDP (AFM) (C.D. Cal. May 13, 2020). Upon the filing of Case No. 20-4350, counsel for both parties met-and-conferred to discuss the status of Ms. Johnson's administrative claim before DHS. *Id.* (¶ 17). Based on the information provided by Ms. Johnson's counsel to the Government's counsel, DHS was able to locate the claim. *Id.* The parties agreed that DHS should have the opportunity to attempt to adjudicate the claim and, therefore,

---

[5] The District Court agreed with the Government's assertion that Ms. Johnson's administrative claim was not "*presented* until it was received by [DHS] on May 17, 2018." *See* 1-ER-6 at n.1 (quoting 28 U.S.C. § 2401(b) for the proposition that a "tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues . . .") (emphasis omitted); *see also* 2-ER-84 at n.6 (citing *Johnson v. United States*, Case No. 2:20-cv-04350, ECF No. 1, ¶ 11 (C.D. Cal. May 13, 2020)) (Ms. Johnson acknowledges that she filed her administrative claim on May 14, 2018, but that DHS did not receive it until May 17, 2018.); *see, e.g.*, 2-ER-84–86; 2-ER-138; 2-ER-142 at n.1; 2-ER-208; *see also* 2-ER-47 at n.4.

[6] Indeed, it now appears that DHS had lost Ms. Johnson's claim. 2-ER-105 (¶ 17) ("based on the information provided by Plaintiff's counsel to Defendant's counsel, *DHS was able to locate the claim*").

on November 4, 2020, they stipulated to dismiss the civil court proceeding without prejudice. *Id. See* Stipulation to Dismiss Action Without Prejudice, *Johnson v. United States*, No. 20-cv-04350 DDP (AFM) (C.D. Cal. Nov. 4, 2020). DHS denied Ms. Johnson's administrative tort claim on May 7, 2021. *Id.* (¶ 18).

On November 4, 2021, Ms. Johnson refiled her FTCA claims against the Government in the District Court for the Central District of California. 2-ER-233–61 [Doc 1]. On April 18, 2022, the Government filed a Motion to Dismiss Plaintiff's Complaint on the basis that her claims were untimely, among others. 2-ER-189–222 [Doc 27]. On June 6, 2022, Ms. Johnson opposed the Government's Motion to Dismiss. 2-ER-155–88 [Doc 28]. The Government replied on June 9, 2022. 2-ER-145–54 [Doc 29]. On July 18, 2022, the District Court ordered the parties to file supplemental briefing on when Ms. Johnson's claims accrued and the applicability of *Heck v. Humphrey*, 512 U.S. 477 (1994). 2-ER-144 [Doc 34]. Both parties filed their respective supplemental briefs on August 4, 2022. 2-ER-137–43 [Doc 35]; 2-ER-130–36 [Doc 36]. On September 22, 2022, the District Court granted the Government's Motion to Dismiss, finding that Ms. Johnson's claims were untimely, and provided Plaintiff with leave to amend. 1-ER-9–20 [Doc 4] (the "First MTD Order").

Ms. Johnson filed a FAC on September 30, 2022. 2-ER-100–29 [Doc 43]. On October 14, 2022, the Government moved to dismiss the FAC on the grounds that

Ms. Johnson's claims were untimely, among others. 2-ER-65–99 [Doc 44]. Ms. Johnson opposed the Government's second Motion to Dismiss on November 14, 2022, 2-ER-32–64 [Doc 46], and the Government replied on November 21, 2022, 2-ER-22–31 [Doc 47].

On January 4, 2023, the District Court granted the Government's Motion and dismissed without leave to amend, again finding that Ms. Johnson's claims were untimely. 1-ER-2–8 [Doc 49]. In the Second MTD Order, which incorporated by reference the First MTD Order, the District Court found that equitable tolling applied to Ms. Johnson's claims up to the date she was awarded U.S. citizenship on June 14, 2016—*less than two years* before she presented her administrative claim to DHS on May 17, 2018. *See* 1-ER-8; 1-ER-20 ("Ms. Johnson fails to explain why *after* she had obtained counsel *and* became a U.S. citizen, she was unable to timely file her administrative claim."). Nonetheless, the District Court found this was not sufficient to save Ms. Johnson's claims because the court determined Ms. Johnson was required to demonstrate tolling for *an additional two years* up until the day she presented her administrative claim. *See* 1-ER-20 ("Because Ms. Johnson fails to demonstrate that equitable tolling applies to her claims *after* June 14, 2016 *and* May 10, 2018, respectively, the Court finds that the statute of limitations bars Counts One through Four.").

### 3.   Appellate Proceedings

On March 5, 2023, Ms. Johnson timely filed her Notice of Appeal. 2-ER-262–63 [Doc 50]. This case was subsequently docketed on March 7, 2023. [Dkt. 1].[7] Pursuant to the Court's Time Schedule Order, Ms. Johnson submitted her Mediation Questionnaire on March 14, 2023. [Dkt. 2]. The following day, the Court scheduled a dial-in telephone assessment conference with counsel and Circuit Mediator Roxane G. Ashe to explore settlement potential. [Dkt. 4]. On April 18, 2023, counsel for both parties participated in the assessment conference. That same day, the case was released from the Court's Mediation Program. [Dkt. 13].

## SUMMARY OF THE ARGUMENT

The District Court dismissed Ms. Johnson's claims based on a misapplication of the doctrine of equitable tolling. The District Court incorrectly found that Ms. Johnson was required to demonstrate tolling beyond the FTCA's two-year statute of limitations period. Because the District Court's decision in the Second MTD Order was premised on a clear error of law, the District Court abused its discretion, and its decision should be reversed.

---

[7] References to "Dkt." are to documents contained in the Record on Appeal and are designated by their docket numbers.

## STANDARD OF REVIEW

The Ninth Circuit reviews a district court's misapplication of the law for an abuse of discretion. *United States v. Hinkson*, 585 F.3d 1247, 1261 (9th Cir. 2009) (en banc), *full court rehearing denied*, 611 F.3d 1098 (9th Cir. 2010) ("a district court abuses its discretion when it makes an error of law"). The abuse of discretion standard requires the appellate court to engage in a two-pronged inquiry. *Id.* at 1261-62. First, the appellate court must "determine de novo whether the trial court identified the correct legal rule to apply to the relief requested." *Id.* If the trial court identified the correct legal rule, the appellate court must then "determine whether the trial court's application of the correct legal standard was (1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record." *Id.* at 1262 (quoting *Anderson v. Bessemer City, N.C.*, 470 U.S. 564, 577 (1985)) (internal quotation marks omitted).

It is well established that a district court abuses its discretion when, as here, its decision is based on a misstatement or misapplication of the law to the facts. *See, e.g.*, *Koon v. United States*, 518 U.S. 81, 100 (1996) ("A district court by definition abuses its discretion when it makes an error of law."); *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1115 (9th Cir. 2017) ("it will always be considered an abuse of discretion if the district court materially misstates or misunderstands the applicable law"); *Yokoyama v. Midland Nat'l Life Ins., Co.*, 594 F.3d 1087, 1091 (9th Cir. 2010)

("[T]his court has oft repeated that an error of law *is* an abuse of discretion. . . . If the district court's determination was premised on a legal error, we will find a per se abuse of discretion.") (emphasis in original); *Richard S. v. Dep't of Developmental Servs. of California*, 317 F.3d 1080, 1085-86 (9th Cir. 2003) (a "district court abuses its discretion if its ruling . . . is based on an inaccurate view of the law") (internal quotation marks omitted); *United States v. Beltran-Gutierrez*, 19 F.3d 1287, 1289 (9th Cir. 1994) ("A trial court abuses its discretion by erroneously interpreting the law.").

In reviewing the trial court's legal determination, the Ninth Circuit affords the district court no deference. *See Mastro v. Rigby*, 764 F.3d 1090, 1097 (9th Cir. 2014); *see also Romero v. Perryman* (*In re Easysaver Rewards Litig.*), 906 F.3d 747, 755 n.5 (9th Cir. 2018).

## **ARGUMENT**

## I.   **THE DISTRICT COURT ABUSED ITS DISCRETION BY FINDING THAT MS. JOHNSON WAS REQUIRED TO DEMONSTRATE EQUITABLE TOLLING BEYOND THE STATUTORY LIMITATIONS PERIOD**

The District Court misapplied the doctrine of equitable tolling when it dismissed Ms. Johnson's FAC. "As a general matter, equitable tolling ***pauses*** the running of, or tolls, a statute of limitations when a litigant has pursued his rights diligently but some extraordinary circumstance prevents him from bringing a timely action." *DeNoce v. Neff* (*In re Neff*), 824 F.3d 1181, 1184 (9th Cir. 2016) (citing

*Lozano v. Montoya Alvarez*, 572 U.S. 1, 10 (2014)). In other words, equitable tolling "effectively extends an otherwise discrete limitations period" for filing a lawsuit. *Lozano*, 572 U.S. at 10; *see also United States v. Ibarra*, 502 U.S. 1, 4 n.2 (1991) ("Principles of equitable tolling usually dictate that when a time bar has been suspended and then begins to run again upon a later event, the time remaining on the clock is calculated by subtracting from the full limitations period whatever time ran before the clock was stopped."). Here, while the District Court identified the correct legal principle to apply in determining the timeliness of Ms. Johnson's claims (equitable tolling), the court failed to correctly apply that doctrine to the facts.

As an initial matter, the District Court found that Ms. Johnson demonstrated equitable tolling up until the day she was issued a U.S. passport on June 14, 2016. *See* 1-ER-8 (incorporating by reference 1-ER-19–20) ("However, Ms. Johnson fails to explain why *after* she had obtained counsel *and* became a U.S. citizen, she was unable to timely file her administrative claim.") (emphasis in original). This means that the FTCA's two-year statute of limitations started to run on that day. *See Neff*, 824 F.3d at 1184. Ms. Johnson filed her administrative claim less than two years later on May 14, 2018, making her claims timely.[8]

---

[8] Even if the Court finds that May 17, 2018 is appropriate date on which Ms. Johnson presented her administrative claim to DHS, her claims are still timely.

Notwithstanding, the District Court *also* concluded that, under the doctrine of equitable tolling, Ms. Johnson was required to demonstrate tolling up until the day she presented her administrative claim to DHS, finding that she "must show that equitable tolling applies from August 16, 2012 to ***May 14, 2018*** for her false arrest and imprisonment and [intentional infliction of emotional distress] claims, and from May 10, 2018 to ***May 14, 2018*** for her malicious prosecution and negligence claims." *See* 1-ER-8 (incorporating by reference 1-ER-19–20). The District Court concluded that because Ms. Johnson failed to "proffer[] any justification for a further delay once she was in the United States, without legal disability, and represented by counsel," her claims were untimely. *Id.*

As discussed above, that is not what equitable tolling requires. Equitable tolling does not require the litigant to demonstrate that tolling applies up until the day the lawsuit is filed. That would be ludicrous and entirely contrary to the concept of equitable tolling. Instead, under the doctrine, the periods of tolling are not counted towards the calculation of the statute of limitations. *Ibarra*, 502 U.S. at 4 n.2. Thus, here, because the District Court ruled that Ms. Johnson satisfied the requirements of equitable tolling until June 14, 2016, she had until June 14, 2018 (*i.e.*, two years after her claims started accruing) to file her administrative claim with the appropriate Federal agency. That is precisely what she did.

Accordingly, the District Court's dismissal of Ms. Johnson's FTCA claims was an abuse of discretion, and its decision should be reversed. *Mastro*, 764 F.3d at 1097; *In re Easysaver Rewards Litig.*, 906 F.3d at 755 n.5.

## **CONCLUSION**

For the foregoing reasons, Ms. Johnson respectfully requests this Court reverse the District Court's Second MTD Order and remand the case back to the District Court with instructions to deny Defendant's Motion to Dismiss Plaintiff's First Amended Complaint.

Dated: May 4, 2023

Respectfully submitted,

LARSON LLP

By: */s/ Stephen G. Larson*
Stephen G. Larson
slarson@larsonllp.com
Jerry A. Behnke
jbehnke@larsonllp.com
Catherine S. Owens
cowens@larsonllp.com

Jason D. Wright
jwright@curtis.com
Lorena Guzmán-Díaz
lguzman-diaz@curtis.com
CURTIS, MALLET-PREVOST,
COLT & MOSLE LLP
101 Park Avenue
New York, New York 10178

(*cont'd*)

Keith R. Ayers, Esq.
4958 Radford Avenue
Valley Village, California 91607
*keith.robert.ayers@gmail.com*

Attorneys for Plaintiff-Appellant
SOFIA JOHNSON

## STATEMENT OF RELATED CASES

Pursuant to Ninth Circuit Rule 28-2.6, Plaintiff-Appellant is unaware of any related cases pending in this Court.

Dated: May 4, 2023

LARSON LLP

By: */s/ Stephen G. Larson*
Stephen G. Larson
*slarson@larsonllp.com*
Jerry A. Behnke
*jbehnke@larsonllp.com*
Catherine S. Owens
*cowens@larsonllp.com*

Jason D. Wright
*jwright@curtis.com*
Lorena Guzmán-Díaz
*lguzman-diaz@curtis.com*
CURTIS, MALLET-PREVOST,
COLT & MOSLE LLP
101 Park Avenue
New York, New York 10178

Keith R. Ayers, Esq.
4958 Radford Avenue
Valley Village, California 91607
*keith.robert.ayers@gmail.com*

Attorneys for Plaintiff-Appellant
SOFIA JOHNSON

**UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

**Form 8. Certificate of Compliance for Briefs**

**9th Cir. Case Number(s)** _____23-55210_____

I am the attorney or self-represented party.

**This brief contains** _____5,015_____ words, excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[X] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
  [ ] it is a joint brief submitted by separately represented parties;
  [ ] a party or parties are filing a single brief in response to multiple briefs; or
  [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** *s/ Stephen G. Larson*_____ **Date** ___May 4, 2023____